IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| MOUSTAPHA MOMUH BIYDE,<br><br>Petitioner,<br><br>vs.<br><br>PAMELA BONDI, Attorney General of the United States; KRISTI NOEM, Secretary, U.S. Department of Homeland Security; TODD M. LYONS, Acting Director of Immigration and Customs Enforcement; DAVID EASTERWOOD, Acting Director, St. Paul Field Office Immigration and Customs Enforcement; and JOEL BROTT, Sheriff of Shelburne County,<br><br>Respondents.[1] | **0:26-cv-01800-SHL-SGE**<br><br><br>**ORDER DENYING PETITIONER'S VERIFIED PETITION FOR WRIT OF HABEAS CORPUS** |

## I.   INTRODUCTION.

Petitioner Moustapha Momuh Biyde is a citizen of Cameroon who has been in the United States since 2022. Petitioner was arrested by U.S. Immigration and Customs Enforcement ("ICE") officials in July 2025. He seeks a writ of habeas corpus pursuant to 28 U.S.C. §2241 challenging his detention. For the reasons set forth below, the Court DENIES Petitioner's Verified Petition for Writ of Habeas Corpus because immigration officials substantially complied with all applicable due process and statutory requirements.

## II.   FINDINGS OF FACT.

Petitioner is a citizen of Cameroon who has been present in the United States since 2022. (ECF 1, ¶ 13.) Petitioner was encountered by U.S. Customs and Border Protection agents on July 26, 2022, at or near Calexico, California. (ECF 5, ¶ 6.) He was determined to be inadmissible pursuant to INA § 212(a)(7)(A)(i)(I) and processed for expedited removal pursuant to 8 U.S.C. § 1225(b)(1). (Id., ¶ 7.) While in ICE custody, Petitioner's case was referred to the Asylum Office, which concluded on August 31, 2022, that he made a positive credible claim of fear of persecution. (Id., ¶¶ 8–10.) The same day, USCIS issued petitioner a Notice to Appear. (Id., ¶ 11.) He was

---

[1] Markwayne Mullin and Todd Blanche are automatically substituted in as the Secretary of Homeland Security and Acting Attorney General, respectively. The Clerk of Court is directed to replace Pamela Bondi and Kristi Noem on the docket.

1

released pursuant to INA § 212(d)(5)(A) humanitarian parole on October 25, 2022. (ECF 1, ¶ 14; ECF 4, p. 2; ECF 5, ¶ 13.)

In July 2025, Petitioner was charged with domestic assault and taken into state custody at the St. Louis County Jail. (ECF 1, ¶ 17.) On July 18, 2025, immediately upon his release from state custody, he was taken into custody by ICE officers. (ECF 1, ¶ 17.) Immigration officers issued an I-200 Warrant of Arrest alleging that Petitioner was removable based on "the pendency of ongoing removal proceedings against the subject" and "statements made voluntarily by the subject to an immigration officer and/or other reliable evidence that affirmatively indicate the subject either lacks immigration status or notwithstanding such status is removable under U.S. immigration law." (ECF 5-1.) Petitioner was initially detained in Kandiyohi County Jail, then transferred to Crow Wing County Jail, and finally to the Sherburne County Jail, where he is now detained. (ECF 1, ¶ 19.) The domestic assault charge was ultimately dismissed, and Petitioner was convicted of disorderly conduct. (Id., ¶ 17.)

In December 2025, Petitioner filed a Petition for Writ of Habeas Corpus. *See Momuh v. Kandiyohi Cnty. Jail*, No. 0:25-cv-4791-PAM-EMB (D. Minn. filed Dec. 29, 2025) (*Biyde I* ECF 1). He argued that his detention violated 8 U.S.C. § 1226 and the Due Process Clause of the Fifth Amendment. (Id.) Judge Paul A. Magnuson denied his petition. (*Biyde I* ECF 10.) Petitioner filed a second petition on February 6, 2026, which was docketed with Judge Daniel M. Traynor. *Momuh v. Crow Wing Cnty. Jail*, 0:26-cv-1131-DMT-SGE (D. Minn. filed Feb. 6, 2026) (*Biyde II* ECF 1). Judge Traynor dismissed it that day pursuant to 28 U.S.C. § 2244. (*Biyde II* ECF 2.) Finally, he filed this case on March 10, 2026. (ECF 1.) He now alleges violations of the Fifth Amendment Due Process Clause, Fourth Amendment, the Immigration and Nationality Act ("INA"), and the Administrative Procedure Act ("APA"). (Id., ¶¶ 40–76.)

### III.    HABEAS CORPUS STANDARDS.

Petitioner is entitled to writ of habeas corpus if, as relevant here, "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Th[e] right [of habeas corpus] extends to those persons challenging the lawfulness of immigration-related detention." *Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 900–01 (D. Minn. 2020) (citing *Demore v. Kim*, 538 U.S. 510, 517 (2003) and *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001)). Petitioner bears the burden of proving by a preponderance of the evidence that his detention is unlawful. *See Walker v. Johnston*, 312 U.S. 275, 286–87 (1941); *see also Bradin v.*

*U.S. Prob. & Pretrial Servs.*, No. 22-3032, 2022 WL 1154622, at *3 (D. Kan. Apr. 19, 2022) (collecting cases).

## IV.    LEGAL ANALYSIS.

### A.  This Court Will Retain the Case.

Respondents first argue that the case should be transferred to Judge Magnuson because he handled an earlier habeas petition by Petitioner. (ECF 4, pp. 4–6.) Pursuant to the District's Order for Assignment of Cases[2] and in consultation with Judge Magnuson, the Court has determined that it will retain the case.

### B.  Due Process.

Petitioner alleges that his continued detention violates due process as guaranteed by the Fifth Amendment. (ECF 1, ¶¶ 40.) Respondents contend that Judge Magnuson's previous order precludes the Court from reaching this issue and, in the alternative, that Petitioner is not owed additional process. (ECF 4, pp. 4–7.) As a threshold matter, this Court concludes that Judge Magnuson's order in *Biyde I* does not preclude this Court from considering the due process argument. *Biyde I* did not address due process and was dismissed without prejudice. In these circumstances, there is neither claim nor issue preclusion. *See Ismahan M. v. Bondi*, No. 26-cv-1418 (D. Minn. filed Feb. 20, 2026) ("The Court adjudicates the Petition on grounds not reached by Judge Magnuson, so the law of the case does not apply. And Judge Magnuson dismissed the petition without prejudice, so res judicata does not apply."); *Al-Saadoon v. Barr*, 973 F.3d 794, 801 (8th Cir. 2020) ("Generally speaking, a dismissal without prejudice means a dismissal without barring the plaintiff from returning later, to the same court, with the same underlying claim."). The Court turns to the merits.

"It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Demore*, 538 U.S. at 523. "At the same time, however, [the Supreme Court] has recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process." *Id.* Petitioner is detained pursuant to 8 U.S.C. § 1225(b)(2). (*Biyde* I ECF 10, p. 4.) "§§ 1225(b)(1) and (b)(2) mandate detention of aliens throughout the completion of applicable proceedings and not just until the moment those proceedings begin." *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018).

---

[2] https://www.mnd.uscourts.gov/sites/mnd/files/Order-for-Assignment-of-Cases.pdf.

Petitioner's due process claim has two parts: <u>first</u>, he argues that his ongoing detention is unconstitutional because he was arrested "without a previously prepared warrant" and, <u>second</u>, he argues that it violates due process for him to be detained without an individualized determination by an Immigration Judge regarding dangerousness or risk of flight. (ECF 1, ¶¶ 51–52.)

The first argument is not compelling. Respondents have established that they obtained a warrant the same day Petitioner was taken into ICE custody. (ECF 5-1.) This substantially complies with 8 U.S.C. § 1226(a) even if the warrant did not exist the moment of his arrest. Moreover, 8 U.S.C. § 1357(a) gives immigration officers the power to act without a warrant in some circumstances, including, as relevant here, the power to:

> arrest any alien who in his presence or view is entering or attempting to enter the United States . . . or to arrest any alien in the United States, if he has reason to believe that the alien so arrested is in the United States, if he has reason to believe that the alien so arrested is in the United States in violation of any such law or regulation and is likely to escape before a warrant can be obtained for his arrest, but the alien arrested shall be taken without unnecessary delay for examination before an officer of the Service having authority to examine aliens as to their right to enter or remain in the United States . . . .

*Id.* § 1357(a)(2). In turn, 8 C.F.R. § 287.3(a) states that the "examination" referenced in § 1357(a)(2) shall be made "by an officer other than the arresting officer. If no other qualified officer is readily available and the taking of the alien before another officer would entail unnecessary delay, the arresting officer, if the conduct of such examination is a part of the duties assigned to him or her, may examine the alien." Section 287.3(d) then states that except in extraordinary circumstances or where voluntary departure has been granted, a determination must be made within forty-eight hours "whether the alien will be continued in custody or released on bond and recognizance and whether a notice to appear **and** warrant of arrest as prescribed in 8 CFR parts 236 and 239 will be issued." (emphasis added).

Parsing the language, these provisions give an immigration officer the authority to make a warrantless arrest if: (i) the officer has reason to believe the alien is in the United States without lawful status; (ii) the officer has reason to believe the alien is likely to escape before a warrant can be obtained for his arrest; (iii) the alien is taken without unnecessary delay for examination before a qualified immigration officer; (iv) the examining officer is different than the arresting officer unless no such person is "readily available;" and (v) a determination is made within forty-eight hours whether a notice to appear and arrest warrant will be issued. Here, the first and fifth

4

conditions were clearly satisfied. The fact that Petitioner was arrested for domestic assault satisfies the second. Finally, although the record is light on details, arrest records show that Petitioner provided documents and information relating to the immigration process. (ECF 5-2, p. 3.) The records further state that he "claims fear of the Cameroon government because they killed everyone in his village." (Id.) This information is enough to indicate that Petitioner was examined by either a "qualified immigration officer" or the arresting officer because no examining officer was "readily available." For this reason, and because immigration officials promptly obtained an arrest warrant, the Court must conclude that Petitioner has not met his burden of proving noncompliance with 8 C.F.R. § 287.3.

Petitioner's second argument is far more compelling. Because he previously was released on conditions, the Court almost certainly would conclude that he cannot be taken back into custody indefinitely without a new bond hearing before an Immigration Judge. Petitioner reports, however, that he received such a hearing, and bond was denied. (ECF 7.) The Court presumes that bond was denied on the merits, as opposed to the Immigration Judge concluding that it lacked jurisdiction. Accordingly, Petitioner has already received the process this Court otherwise would order. In other words, regardless of the authority on which he relies—the INA, due process clause, APA, or Fourth Amendment—Petitioner has received the process to which he is entitled.

## V.    CONCLUSION.

Based on the foregoing, Petitioner's Verified Petition for Writ of Habeas Corpus (ECF 1) is DENIED. The Clerk of Court is directed to enter judgment in favor of Respondents and close this case.

**IT IS SO ORDERED.**

Dated: April 20, 2026

_____
Stephen H. Locher
UNITED STATES DISTRICT JUDGE

5